CASE 24—PETITION EQUITY—MARCH 11.

## Bradbury v. Walton, &c.

APPEAL FROM MASON CIRCUIT COURT.

1. THE LEGISLATURE HAS POWER TO AUTHORIZE THE COUNTY COURT TO CLOSE OR DISCONTINUE PUBLIC ROADS without making compensation to the owners of abutting property, although no such power exists as to the streets of a town or city.

2. THE JUDGMENT OF A COUNTY COURT CLOSING A PUBLIC ROAD IS CONCLUSIVE as to parties to the proceeding, until set aside or reversed.

EDWARD W. HINES FOR APPELLANT.

1. So far as the rights of abutting property owners are concerned, there is no difference between the streets of a city and the public roads of a county. Both are public highways, and in each case the abutting property owner has an inviolable right to the unobstructed use of the contiguous highway, of which he can not be deprived without just compensation. (Transylvania University v. City of Lexington, 3 B. M., 25; Gargan, &c., v. Railroad Co., 89 Ky., 212; Bannon v. Rohmeiser. 90 Ky.. 48; Elliott on Roads and Streets, p. 662.)

2. If the statute (General Stats, chap. 110, sec. 13),'under which the county court acted is unconstitutional, all proceedings under it are void, and therefore the judgment of the county court is not conclusive. (Freeman on Judgments, ? 120.)

T. C. CAMPBELL AND A. M. J. COCHRAN, OF COUNSEL ON SAME SIDE.

E. L. WORTHINGTON FOR APPELLEES.

1. The judgment of the county court is conclusive. (2 Black on Judgments, secs. 812, 795, 731.)

2. The owner of a farm in the country has no *private property rights* in a county road, such as an abutting lot-owner has in a city street. (Transylvania University v. City of Lexington, 3 B. M., 27; E., L. & B. S. R. Co. v. Jackson, 9 Ky. Law Rep., 242; Lexington & Ohio R. Co. v. Applegate, 8 Dana, 294; Campbell Turnpike Co. v. Dye, 18 B. M., 761; E. & P. R. Co. v. Thompson, 79 Ky., 52; Rowan v. The Town of Portland, 8 B. M., 236; L., St. L. & T. R'y Co. v. Hess, &c. 92 Ky., 407.)

GARRETT S. WALL OF COUNSEL ON SAME SIDE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The contention by the appellant in this case is, that the statute authorizing the county court to close lateral roads, or what is known as ordinary highways, when running within a certain distance of a turnpike road (one mile), is unconstitutional. It appears from the petition filed, in which it is alleged that the closing of a lateral road by the defendants was an interference with the right of the appellant to pass from one part of his land to another, that the road had

been ordered closed by the county court of Mason in
a proceeding under chapter 110 of the General Stat-
utes, to which the appellant was a party, and that he
appeared in that court and resisted the motion.   It
seems to us that proceeding must bar the recovery of
the appellant in this case.   The appellee closed the
highway on his own land, and by virtue of the judg-
ment of the county court, and until that order is
reversed it is binding on both the public and the
appellant.   It is argued, however, that the act is un-
constitutional, and, if so, the judgment of the county
court is a mere nullity; and if this view of the ques-
tion was even conceded, with the broad and almost un-
limited power of county courts over the highways of
the State within their jurisdiction, it must be held
that a proceeding to close, alter or discontinue a pub-
lic road, with the party complaining a party to that
proceeding, and a judgment entered, such a judgment
must be deemed conclusive so long as it remains in
force.   The appellee closed the road on his own land,
and therefore no trespass was committed by an entry
on appellant's land, and unless the latter had some
right of property in this easement, not only on his
own land, but on the land of the appellee, no action
can be maintained by reason of the wrong com-
plained of.

The public highways of the State, known as county
roads, are opened and maintained for the public, and
not for mere individual use, and whenever it may be
deemed proper to close, alter or discontinue a county
road the power is given to the county court to make
such changes as may be conducive to the public wel-

fare, and the right to close a highway that affects the
travel on a turnpike is expressly given the county
court, to be exercised only when the public good re-
quires it, and of this the county court must be the
exclusive judge, and its action only subject to review
by some higher tribunal.    It was to encourage the
construction of better and more permanent roads for
the convienience of trade and travel, and to prevent
the avoidance of turnpike gates, that the statute was
enacted, and in such cases mere private convenience
has been subordinated to the public good.

. A private citizen has no right of property in a
public road, although it passes over his own land,
unless he owns the land itself subject to the ease-
ment.    If the owner of land abutting on a public
road has a right of property in the easement, it nec-
essarily follows that no change or alteration can be
made without first making compensation to the owner,
as it would be a taking of private property for public
use without compensation; but he has no other inter-
est except such as is common to the entire public,
and where he is the owner of the land and the road
is discontinued, its use then reverts to him to the ex-
tent he has title, but no further.

This court in the case of Lexington and Ohio R.
Co. v. Applegate, reported in 8 Dana, 294, recognizes
the distinction between the streets of a town or city
and an ordinary public way.    "An ordinary public
way," says the court in that case, "may be discon-
tinued or applied to some other public purpose than
that for which it was first established, without any
legal liability for pecuniary compensation to the local

public or to any owner of adjoining land—because neither such public nor proprietor had any right of *property* in the *way*, or any other legal interest in it than that which was common to all the people."

The distinction is this : Ordinary highways, or what are termed county roads, are created by law for the public, and the land or its use taken from the owner in the first place by paying him its value; or there may be sometimes such a dedication by the individual owner and an acceptance by the county court, as will create this easement without compensation. The streets of a town or city are acquired by grant with the implied right of ingress and egress to the abutting lot-owner, the grantor, or the party making the dedication, saying to the owners of lots, this right of ingress and egress you shall have. But not so with an ordinary public road. The State creates the easement for the entire public ; its use is that of the public, one citizen having as much right to this use as the other, and when its abandonment or non-use is deemed necessary for the public good, the county court may discontinue it altogether, and in that tribunal the question must be made. In the case of Campbell Turnpike Company v. Dye, &c., reported in 18 B. M., 761, the construction of this same statute was the matter in controversy. The statute reads: "No lateral road shall be opened to and from the same places now connected by any turnpike, gravel or plank road, or which may hereafter be so connected, as to run within one mile of such road ; and any such lateral road now in use, or which may hereafter be in use, shall, by order of the county court, be

shut up and closed. But such lateral roads shall not be precluded from so running as near as a mile for the distance of one mile from any town or city." (General Statutes, chap. 110, sec. 13.)

The court, in alluding to the argument made by counsel as to the individual injury that must result to the owner of the abutting land, expressed the opinion that no such question could be raised on the hearing in the county court, the statute being imperative as to discontinuing the road. All the county court could do was to obey the statute. It is true the constitutional question was not raised in that case, but the inconveniences resulting to the land owners were greater in that case than in this, and such as to suggest to court and counsel the importance of a careful consideration of the question; and besides this court has, since the case referred to, passed upon the rights of the land owner in that class of cases more than once in manuscript opinions, and while no constitutional question was made, we are satisfied the statute would have been held valid in those cases, as it must be in this.

Judgment sustaining the demurrer to the petition is affirmed.