CENTRAL TRUST CO. OF NEW YORK v. LOUISVILLE, ST. L. & T. RY. CO. (HENNEN, Intervener).

(Circuit Court, D. Kentucky.   June 1, 1897.)

Nos. 6,345, 6,346.

1. RAILROAD MORTGAGES—CLAIMS FOR PURCHASE MONEY OF RIGHT OF WAY— PRIORITIES.
    Railroad mortgage bondholders, who, by virtue of a future-acquired property clause in their mortgage, obtain an interest in or lien upon lands condemned for the use of the company, hold subject to the claim of the prior owner for the purchase money.

2. SAME.
    Holders of railroad bonds secured by a mortgage made after certain property has been taken for the use of the road, but before compensation has been made, take subject to the compensation which may be adjudged therefor, and are bound by the judgment, though they were not parties to the suit in which it was rendered.

3. SAME—FORECLOSURE SUITS—PRIORITIES—STATE JUDGMENTS.
    H. owned a lot, which originally formed part of a large tract owned by T., and the only means of access to the lot was a highway running across the front of the original tract.   The highway was discontinued by the county court without making any other provision for access to the lots fronting thereon. The strip that had formed the highway was thereafter condemned by a railroad company in proceedings brought against the heirs of T., on the theory that the land had reverted to them, and the compensation adjudged to them was paid.   The railroad having been constructed with an embankment which interfered with H.'s ingress and egress, she sued the company for damages thereto, and obtained a money judgment; the court holding that when the fee reverted, if it did revert, to the heirs of T., it was subject to a contractual easement for ingress and egress, which had previously arisen in favor of the various purchasers of lots constituting part of the original tract, and for injury to this easement damages were adjudged.   A suit having been brought in a federal court to foreclose mortgages on the railroad, H. intervened, setting up her judgment as a preferred claim.   *Held*, that the mortgage bondholders were bound by the judgment of the state court, though their trustee was not a party thereto, and that the judgment was entitled to priority over the bonds.

Sweeney, Ellis & Sweeney and Kinney, Gregory & Kinney, for intervener.

Helm & Bruce, for Central Trust Co. of New York.

BARR, District Judge.   The court, on demurrer to the intervening petition, filed by Mrs. Hennen herein, indicated in a general way its view of the law as applicable to her claim.   The case has come before me again, as the parties do not seem to have agreed upon what are their respective rights, and from the briefs filed there is an indication that both the petitioner and the railroad company are not quite satisfied with the law which the court thought applicable in the opinion heretofore rendered.

The case is, briefly, this: Mrs. Hennen had a residence adjoining the town of Hawesville, but not within the limits of the town. Her lot contained about four acres of land, upon which she had a handsome residence, and where she and her family lived. At the time of her purchase, some years ago, there was a public highway along the entire front of her lot,—some 315 feet. On the back of the lot there was a precipitous cliff, which prevented any access from that direction, and on either side were lots owned by other parties. This public highway seems to have been the only mode of egress and ingress to her residence and property. This highway was the road running between Hawesville and Cloverport, both on the Ohio river, and is called in the evidence the "State Road." The defendant railroad built its line on this highway, and in doing so made an embankment in front of the plaintiff's lot and residence of some 5 or 6 feet in height. This embankment was some 55 or 60 feet from the residence of the petitioner, and perhaps about 120 feet from the Ohio river. Previous to the building of the railroad, the space between what was called the "State Road," which ran from Hawesville to Cloverport, and the Ohio river, was open and unfenced, and was used as a skiff landing by the petitioner; and trees had been planted upon it by the petitioner for the purpose of improving the view from the front of her residence. A short time before the construction of the railroad the Hancock county court, by a proceeding taken in that court, discontinued so much of this state road as commenced at the town limits of Hawesville, and ran to a place called "Price's Store." The precise distance is not stated in the record, but presumably, from other facts, only a short distance. There is nothing in the record indicating that there was any other road or highway established by the county court, or any other provision made for those fronting upon this old state road to get egress and ingress from their property and homes. The homestead of the petitioner was part of an 80-acre tract which belonged originally to one of the Trabue heirs, and the 80 acres itself was part of a tract much larger,—probably 200 and odd acres,—which belonged to Trabue. After the discontinuance of that part of the state road, a proceeding of condemnation was had against the Trabue heirs, and what was formerly the state road was condemned under this proceeding instituted by the railroad company, and $500 paid for the strip of land originally the state road, and the distance of which is not stated in the record, but was the frontage of 205 acres of land which was originally owned by Trabue. This proceeding was had upon the theory that the fee of the old state road, when discontinued, reverted to the Trabue heirs, and that it was only necessary to take condemnation proceedings against them. Mrs. Hennen, in October, 1889, sued the defendant railroad for damages done her property by the construction of its road and the embankment immediately adjoining her homestead. The damage claimed was the destruction or impairment of her egress and ingress, and for causing water to stand on her lot. Subsequently she amended, and claimed for injury done for the impairment of her view, and for the soot and smoke which was caused by the passing trains, and also

for the injury done by the shaking of her walls. The case was most earnestly fought, and three jury trials were had. The first jury found for the defendant, and its verdict was set aside upon a motion for a new trial. The second jury found for the plaintiff in $1,800 damages. The defendant road took the case to the superior court, and it was reversed by that court because of some instructions which were given on motion of the plaintiff, and some refused which were asked by the defendant. The case went back to the circuit court of Hancock county, and was retried, and again a jury found for the plaintiff in the sum of $1,800 damages. The case was again taken to the superior court of the state, and affirmed, and after this litigation in the state court Mrs. Hennen intervened by petition, and asked that her judgment should be a preferential claim to that of the bondholders. In the litigation in the state courts the trustees of neither of the mortgages were before the court; and it is now insisted by the defendant railroad that the bondholders are not bound by the judgment in the state court, and that this court should consider the claim as an original one, and dispose of it as such.

The first mortgage on this road was made anterior to the building of the road, and the second mortgage after the road was completed. We think, if any of this recovery shall be considered in the nature of a taking of private property for public use, then the bondholders, though not parties to the litigation, are bound to the extent which may be regarded as a taking. As to the prior mortgagee, we think this is clearly so, because the bondholders took by reason of the future-acquired property clause, and would take subject to the purchase money, whether that would be in the nature of condemnation proceedings or by contract. As to the last mortgage, we think it is also to be bound because of the constitutional provision that private property cannot be taken for public uses without just compensation previously made. The right and title of property taken, whether by an entry without condemnation proceedings or whether by an entry under condemnation proceedings, should not vest in the mortgagor until the just compensation is actually paid. The Hennen suit was pending in the state court against the railroad company when it executed this mortgage. The case of Hassall v. Wilcox, 130 U. S. 494, 9 Sup. Ct. 590, cited by counsel, is entirely consistent with this view. If we are right in thinking that the bondholders are bound by the adjudication in the state courts, then the contention of the counsel that Mrs. Hennen had no right of ingress or egress after the discontinuance of the state road in front of her lot, and that according to the Kentucky law she had no right to damages for the destruction of the egress and ingress to her property, is not applicable, since it is quite clear that the superior court decided that she had a right of egress and ingress to her property, notwithstanding the discontinuance of the state road, and that she had a right to recover damages for the destruction or impairment thereof; and the case was returned, and tried upon that distinct adjudication. The court says, in its opinion:

"It is shown that the plaintiff's title extended only to the edge of the highway, but it is also shown that she derived her title from the persons whom the de-

fendant claims to have been the owners of the highway. The boundary of the property was fixed by the conveyance to the edge of the public road, and the road has been used as such by the plaintiff and the owners before her under similar conveyances for more than 30 years. They had no possible way of ingress or egress to the property except over this highway. Under these conditions, it is too plain for controversy that the plaintiff was vested with an easement which she cannot be deprived of by the owners of the fee in the highway or by condemnation proceedings against them. It is equally clear that the railway company had the right to build its railway in the highway, and is answerable to the plaintiff for such damages only as she suffered by reason of the destruction of her egress and ingress over the highway, the throwing of smoke, sparks, and cinders upon or into her house, and the injury done to the walls of her house by jarring or shaking caused by passing trains, and the injury from standing water caused by the railroad embankment."

Again, in another part of the opinion, the court says:

"The only damages which the pleadings allow by reason of the embankment are the obstruction to the ingress and egress, and the standing of water on her lot, and the instructions should have been confined to the damages caused by the embankment,—to these two elements. In this connection we will say that there can be no question but that the plaintiff was entitled to an easement in the highway, and the instruction should have so told the jury, instead of leaving it to them as a fact to be found from the evidence."

The lower court had instructed the jury that she was entitled to an easement, and that was one of the errors which were complained of. Whatever may be the Kentucky law in regard to the right of compensation generally to owners of property on a public highway in the country when that highway has been discontinued by proper authority, as decided in the case of Railroad Co. v. Applegate, 8 Dana, 289, and Turnpike Co. v. Dye, 18 B. Mon. 761, and Bradbury v. Walton, 94 Ky. 163, 21 S. W. 869, it can have no application to the present case, since the superior court of Kentucky in this case decided that she had a contractual right arising from the fact that this highway was over the lands of the persons who were the original owners, and to whom the fee reverted. The Trabue heirs, when the fee reverted, if it did revert, held it subject to the easement, which had previously arisen over that ground in favor of the various purchasers under them; and this right of egress and ingress—a most valuable one itself—was the one that the court decided was in Mrs. Hennen, and had not been taken from her by condemnation proceedings. In that view she was a proper party to those proceedings, and should have been made a party, if the railroad company desired to devest her of this easement.

The effect of the suit in the state court, and the judgment when paid, would be to cover any injury or damage done this right of egress and ingress, and the other elements of damage alleged not only for the past, but for the future. The record clearly shows that in estimating the damage it was to the property, past, present, and future, and that the compensation when paid would cover future as well as past damage, so far as the right of egress and ingress is concerned. In the present condition of the record, I find some difficulty in apportioning the several damages which were covered by the judgment for $1,800 between that which is in the nature of a taking of private property and that which is not. Assuming that $1,800 covered the entire damage, I think $1,500 would be a reason-

able amount to allow for the destruction or impairment of the in-gress and egress. ·This would be five-sixths of the judgment, and I think the costs and the damages which have been allowed should be divided in that proportion. A judgment will therefore be entered giving a preference over the bondholders as herein indicated.