DEPARTMENT OF HIGHWAYS, Common-wealth of Kentucky, and M. W. Tinder, Commissioner, Department of Highways, Appellants,

v.

Henry JACKSON et al., Appellees.

Court of Appeals of Kentucky.

May 10, 1957.

Rehearing Denied June 14, 1957.

Jo Ferguson, Atty. Gen., C. J. Waddill, T. W. Johnson, Asst. Attys. Gen., Clyde E. Reed, Smith, Reed & Leary, Frankfort, for appellants.

Burlyn Pike, Shepherdsville, for appellees.

Thomas C. Carroll, Louisville, Thomas F. Marshall, Funk, Chancellor & Marshall, Frankfort, Huff & Friedlander, Louisville, amici curiae.

CULLEN, Commissioner.

This appeal involves the right of a property owner to recover damages for depreciation in the value of his land as a result of the closing of a county road between his land and a nearby town, so as to require him to travel a greater distance to reach the town.

The Kentucky Turnpike, a limited access toll road, runs north and south through Bullitt County, passing about one-half mile to the east of Lebanon Junction. Prior to the construction of the turnpike, a county road known as Samuels Road ran east from Lebanon Junction, passing the six-acre farm of Henry Jackson and his wife, which was about one mile east of Lebanon Junction. About three-tenths of a mile east of the Jackson farm, a road known as the Old Pine Tavern Road runs to the north and then around to the west to Lebanon Junction. About two-tenths of a mile east of the Jackson farm,

another road known as the Maraman Road runs to the south and connects with State Highway No. 61, which runs west into Lebanon Junction. The distance from the Jackson Farm to Lebanon Junction, by either the Old Pine Tavern Road or the Maraman Road, is about two miles.

In constructing the turnpike, the Samuels Road was closed at the right-of-way lines of the turnpike (about one-half mile to the west of the Jackson farm), so as to bar travel over this road between the Jackson farm and Lebanon Junction. However, the Department of Highways improved the surface of the Old Pine Tavern Road and the Maraman Road, with the view of making them suitable substitute routes of travel.

The Jacksons brought action against the Department of Highways, seeking damages for depreciation in the value of their farm alleged to have resulted from the closing of the Samuels Road. Upon a jury verdict judgment was entered in favor of the Jacksons for $1,500. The Department of Highways has moved for an appeal. Other interested persons have filed amicus curiae briefs.

The facts in this case are substantially similar to those in Ex parte Commonwealth, Ky., 291 S.W.2d 814, in which this Court held that a property owner on a county road proposed to be closed is entitled to damages only when the closing of the road will deprive him of his sole or principal means of ingress and egress. The Department of Highways maintains that the Ex parte Commonwealth case is controlling here. The appellees, and the amicus curiae, argue that the opinion in the Ex parte Commonwealth case departed from the established law of Kentucky, and should be overruled. They further argue that in Standiford Civic Club v. Commonwealth, Ky., 289 S.W.2d 498, it was held that a landowner has a property right in the continued maintenance of either a county road or a city street passing his land, for impairment of which right he is entitled to damages, and that this is the proper rule of law.

Historically, a distinction has been recognized in Kentucky cases between city streets and county roads, as concerns the right of a landowner to continued maintenance of the street or road. This distinction was noted in the early case of Lexington & Ohio Railway Co. v. Applegate, 8 Dana 289, and was reiterated in Bradbury v. Walton, 94 Ky. 163, 21 S.W. 869. In substance, the two rules arising out of the distinction were (1) that a landowner along a county road had no property right in the continued maintenance of the road, and (2) that a landowner along a city street had a right in the nature of a private easement in the continued maintenance of platted or dedicated streets.

■ Although the language employed in some of the early cases would lead one to the conclusion that a landowner along a county road had no vested right even to minimum ingress and egress to his land by means of the road, it was made clear in DeRossette v. Jefferson County, 288 Ky. 407, 156 S.W.2d 165, 168, that if the closing of the road will deprive the owner of "reasonable access" to his land, or of reasonably "convenient ingress and egress," he is entitled to damages. Again, in Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117, 119, wherein there is a thorough review of the previous cases, it was said, "Undoubtedly, a property owner may prevent the closing of a county road which deprives him of his sole or principal means of ingress and egress." Although, in the Wright case, the court was construing the statute then in force with respect to the closing of county roads, and spoke in terms of the right of the landowner to prevent the closing rather than his right to damages resulting from a closing, we think the Wright case is authority, as in the DeRossette case, for the proposition that the landowner along a county road has a property right of reasonable access to the public highway system.

■ As indicated in the Ex parte Commonwealth case, damages resulting from the deprivation of such property right are to be measured by the depreciation in the value of the land.

We believe that the decision in Ex parte Commonwealth is correct, and adheres to the established law of this state as concerns county roads. Of course, what constitutes a "principal means of ingress and egress," [291 S.W.2d 816] within the meaning of that decision, involves considerations of reasonableness, as indicated in the DeRossette opinion.

■ It is argued by amicus curiae that if a landowner suffers a depreciation in the value of his land as a result of the closing of a road, he necessarily has sustained a property damage, which is damage differing in kind from that suffered by the public generally, and for which he should be compensated, regardless of whether he continues to have a reasonable way of ingress and egress. The simple answer to this is that the enhancement in value of land attributable to the mere convenience of the routes of travel which it enjoys (whether such convenience is from the extent to which the surface of the road is improved or from the geographical location) is something which does not inure to the landowner as *property*. The discontinuance of an industrial plant in a community may materially decrease the value of residential property, yet no one would contend that the property owners have suffered *compensable* damages therefrom.

Some difference of opinion appears to exist concerning the meaning and effect of the opinion in Standiford Civic Club v. Commonwealth, Ky., 289 S.W.2d 498. The actual holding in that case was that an injunction would not be granted against the closing of the streets in question, notwithstanding that the Department of Highways had not followed the prescribed statutory procedure for the closing of streets. The

question of damages was not in issue. However, the Court said, at page 500:

"We have long recognized that ownership or occupancy of premises abutting on a street or highway and the right of access to or from a public way carries with it certain property rights in and to the use thereof. If the owners may suffer special injury, they cannot be deprived of the right without just compensation. * * *"

And again, at page 501:

"* * * Property owners who would be specially injured by the closing of a street or public way are generally entitled to injunctive relief. These may include not only those whose property abuts the street obstructed or closed but all others within the area whose access is impaired. * * *"

■ To the extent that the foregoing language suggests that a landowner along a *city street* has a property right over and above the mere right of reasonable ingress and egress to the public ways system, it has support in former cases. However, not so as to *county roads*, and the Standiford opinion cannot be considered as authority for a new rule with respect to property rights in the continued maintenance of county roads.

Because of the confusion that has arisen out of the distinction between city streets and county roads, we are induced to reexamine the distinction to see whether or not it has any valid basis. The reason which has been given for the distinction, namely, that the dedicator of a city plat or subdivision confers upon the lot owners a private easement in the streets, really has no significance, because streets have value only as connecting links in the overall public ways system, and certainly the dedicator cannot confer rights in the system itself. In Lewis, Eminent Domain, Vol. 1, Sec. 205,

it is stated that there should be no distinction between country highways and city streets as respects the rights of abutting owners to continued maintenance. We hereby abolish the distinction, and declare that the rule governing city streets shall be the same as that herein stated for county roads.

To the extent that Bradbury v. Walton, 94 Ky. 163, 21 S.W. 869; Illinois Central Railroad Co. v. Ward, 237 Ky. 478, 35 S.W. 2d 863; Cranley v. Boyd County, 266 Ky. 569, 99 S.W.2d 737; Wright v. Flood, 304 Ky. 122, 200 S.W.2d 117; Standiford Civic Club v. Commonwealth, Ky., 289 S.W.2d 498, and related cases, are in conflict with the views herein expressed, they are overruled.

It is our opinion that the appellees in the case before us have not been deprived of reasonable access from their land to the places where their normal pursuits would take them, over the public ways system. Accordingly, they are not entitled to damages.

The motion for an appeal is sustained and the judgment is reversed, with directions to enter judgment for the defendant in accordance with its motion for judgment notwithstanding the verdict.